1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| DANIEL KIBBEE, | 1:10-CV-00144-GSA |
| | |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S |
| | SOCIAL SECURITY COMPLAINT |
| v. | |
| | |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | |
| | |
| Defendant. | |

18
19

## **BACKGROUND**

20      Plaintiff Daniel Kibbee ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

22  disability benefits and supplemental security income pursuant to Title II and Title XVI of the

23  Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

24  submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate

25  Judge.[1]

26  //

27

28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 8 & 10.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on or about April 11, 2006, alleging disability beginning January 1, 1999. AR 117.  His application was denied initially on September 7, 2006 (AR 64-67), and upon reconsideration on April 24, 2007.   AR 76-80.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 88.  ALJ James P. Berry held a hearing on July 22, 2009 (AR 20-47), and issued an order denying benefits on August 25, 2009. AR 9-19.  Plaintiff requested a review of the hearing and the Appeals Council denied review on December 1, 2009.  AR 1-3.

## Hearing Testimony

ALJ Berry held a video hearing on July 22, 2009, with Plaintiff in attendance in Bakersfield, California and the ALJ presiding in Fresno, California.  Plaintiff was represented by attorney Miss Barker. AR 22.  Vocational expert ("VE") Linda M. Ferra also testified.  AR 44-47.

### *Plaintiff's Testimony*

Plaintiff  was fifty-one years old at the time of the hearing. AR 24. He is currently homeless and often stays with friends. AR 24. He was in the U.S. Navy from 1974 to 1981, and completed a GED while in the military. AR 24-25. He was honorably discharged in 1981. AR 25.

Plaintiff last worked in 1998 or 1999 in a department store performing janitorial duties and maintenance on the dock. AR 25. He kept this job while it was part-time, but resigned when he was offered  full-time employment. AR 26. Plaintiff was also a full-time assistant manager at a hardware store for approximately six months where he was responsible for tracking inventory, cashiering, and helping customers. AR 26-27. He quit that job when he had a disagreement with the owner. AR 27.

Prior to working as an assistant manager, Plaintiff was a hardware store clerk for approximately three months. AR 27-28. He has also held jobs as a delivery person and a maintenance engineer for a medical facility. AR 28. As a maintenance engineer, he repaired

---

[2] References to the Administrative Record will be designated as "AR" followed by the appropriate page number.

1  small equipment. AR 28. Plaintiff was laid off while he was a maintenance engineer, although he

2  also stated he had difficulty with management. AR 29.

3       Plaintiff suffers from severe depression and experiences feelings of hopelessness. AR 29.

4  He believes that his depression in conjunction with difficulty getting along with supervisors

5  causes him to leave jobs and have extended periods of unemployment. AR 29.  Plaintiff's

6  depression began when he was assaulted in the military during the 1980's. AR 29. He still

7  experiences flashbacks and nightmares as a result of this incident. AR 29. He has sought

8  treatment for these problems since 1986 at the Veterans Administration ("VA") clinic in

9  Bakersfield. AR 29-30. He visits the VA every two months for mental health treatment and also

10 travels to West Los Angeles for counseling when he feels his is "in a crisis situation." AR 30.

11 Plaintiff has been prescribed Celexa, Benadryl, and Diazepam which helps control his emotions

12 and improves his coping abilities. AR 30. While the medications are effective, they cause him to

13 become drowsy and he is uncomfortable driving or operating machinery. AR 30-31.

14       Plaintiff also has a history of drug and alcohol abuse.  AR 38.  He is not currently in

15 treatment at this time, however, the church he attends focuses on recovery. AR 38. He last

16 relapsed seven months ago. AR 38.

17       In addition to his psychological conditions, Plaintiff broke his back while working at the

18 medical center.  AR 31-26.  As a result, he suffers from severe pressure and pain in his lower

19 back which causes physical limitations.  AR 31-36.  For example, he can only walk

20 approximately 100 yards and he occasionally uses a cane for assistance.  AR 34. He can only sit

21 for fifteen to twenty minutes before experiencing numbness and he must change positions

22 frequently to alleviate the pain. AR 33-34. He is also only able to stand for increments of twenty

23 minutes during an eight hour period and he sometimes suffers from severe ringing in his ears. AR

24 35, 39. Plaintiff also has difficulty gripping objects with his left hand. AR 35. Finally, he has

25 trouble sleeping at night and therefore must nap for two to three hours during the day. AR 36.

26       Plaintiff has had a number of tests to diagnose his problems and he takes Gabapentin,

27 Ibuprofen, and Hydrocodone to treat the pain. AR 32.  He has also undergone physical therapy,

28

1  heat treatments, and performs stretching exercises which have helped relieve the pain in the past.

2  AR 31-32.

3      With regard to activities of daily living, Plaintiff is able to dress himself and do basic

4  household chores up to four hours per day. AR 37-38. He also helps a friend with her cleaning

5  business by performing light cleaning tasks. AR 41-42. Plaintiff has a valid driver's license and

6  drives three to four times per week to the market and to church unless he feels over medicated.

7  AR 36-37.  In 2006, Plaintiff also traveled to Mississippi to complete some plumbing repairs on

8  a friend's home after Hurricane Katrina. AR 42. Despite these recent activities, Plaintiff does not

9  believe he can return to any of his prior jobs. AR 38.

10      *Vocational Expert Testimony*

11      VE Ferra testified at the hearing and classified Plaintiff's previous work as an assistant

12  manager as "light" work. AR 44. She also classified Plaintiff's past work as a hardware store

13  clerk as "light, semiskilled." AR44. Plaintiff's job as a maintenance engineer was "skilled, heavy

14  work," and the department store work was "unskilled, medium work". AR 44.

15      The VE was also asked to consider a hypothetical in which a worker could lift and carry

16  twenty pounds occasionally and ten pounds frequently; could stand, walk, and sit for up to six

17  hours; could balance, stoop, kneel, crouch, and crawl occasionally; could perform simple,

18  repetitive tasks with the ability to maintain attention, concentration, persistence, and pace; and

19  could interact with others, as well as adapt to the usual changes in a work day. AR 45. The VE

20  indicated such a worker would be unable to perform his past work. AR 45. However, this

21  individual would be able to perform other jobs widely available in the national economy such as

22  a housekeeping cleaner, a packing line worker, and an assembler. AR 45.

23      The VE was asked to consider a second hypothetical in which a worker would have the

24  same vocational parameters, but could only sit for a maximum of two hours a day; could walk a

25  maximum of 100 yards; had difficulty gripping and grasping bilaterally; had the need to change

26  positions frequently; was unable to operate machinery; and required rest and nap breaks up to

27  three hours per day.  The VE indicated that such a worker would not be able to perform past jobs

28  or any other jobs in the national economy. AR 46.

The VE was asked a third hypothetical posed by Plaintiff's attorney in which a worker would have all the problems previously described but also would not be able to attend work on a regular basis. The VE testified that there were no jobs available. AR 46-47.

**Medical Record**

The entire medical record was reviewed by the Court (AR 190-744), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2002. AR 11. He found that Plaintiff has not engaged in substantial gainful activity since January 1, 1999, the alleged onset date, and that Plaintiff has the severe impairment of degenerative disc disease, status post intervertebral fractures, and post traumatic stress disorder ("PTSD").  AR 11.  However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id.*

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and/or carry twenty pounds occasionally and ten pounds frequently, to stand and/or walk six hours in an eight-hour work day, to sit six hours in an eight-hour work day, and to occasionally climb, balance, stoop, kneel, crouch or crawl while performing simple repetitive tasks. The ALJ further found that Plaintiff can maintain attention, concentration, persistence and pace, relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules. AR 12-13. After considering the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is unable to perform any past relevant work.   However, the ALJ found there are significant numbers of jobs in the national economy including house cleaning, packing line worker, and assembler that Plaintiff can perform.  AR 18.  Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act. AR 19.

*///*

1

**SCOPE OF REVIEW**

2      Congress has provided a limited scope of judicial review of the Commissioner's decision

3  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

4  the Court must determine whether the decision of the Commissioner is supported by substantial

5  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

6  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

7  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

8  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

9  401.  The record as a whole must be considered, weighing both the evidence that supports and

10  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

11  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

12  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

13  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

14  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

15  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

16  Cir. 1987).

17

**REVIEW**

18      In order to qualify for benefits, a claimant must establish that he is unable to engage in

19  substantial gainful activity due to a medically determinable physical or mental impairment which

20  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

21  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

22  such severity that he is not only unable to do his previous work, but cannot, considering his age,

23  education, and work experience, engage in any other kind of substantial gainful work which

24  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

25  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

26  Cir. 1990).

27      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

28  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

6

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since January 1, 1999; (2) has an impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; but (5) could perform jobs that exist in significant numbers in the national economy.  AR 11; 18.

Here, Plaintiff argues that the ALJ: 1) improperly rejected the assessment of examining physician, Dr. Hirokawa, 2) erred by not discussing the treating physician's Global Assessment Functioning score ("GAF Score"), 3) failed to fully develop the record, and 4) substituted his own lay opinion in formulating the RFC.

## DISCUSSION

### A.      Evaluation of the Physician Opinion Evidence

#### 1.      *Dr. Hirokawa's Assessment*

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject the limitations assessed by Dr. Hirokawa, an examining physician. (Doc. 15 at 6). In opposition, Defendant asserts that the ALJ did not reject Dr. Hirokawa's assessment but in fact accorded it some weight. Defendant further argues that the ALJ's psychological limitations are consistent with Dr. Hirokawa's assessment. (Doc. 19-1 at 8-9).

Cases in the ninth circuit distinguish among three types of physicians: (1) treating physicians who treat the claimant; (2) examining physicians who assess or examine but do not treat the claimant; and (3) nonexamining physicians who neither examine nor treat, but assess from the records of the claimant. The general rule is that more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  And like the opinion of a treating

1
2
3
doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

4
5
6
7
Here, Plaintiff argues that the ALJ did not give clear and convincing reasons for rejecting Dr. Hirokawa's opinion. Specifically, Plaintiff argues that the ALJ rejected the uncontroverted findings and conclusions of Dr. Hirokawa and substituted his own opinion. (Doc. 15 at 8). The Court disagrees.

8
9
10
11
12
13
14
15
16
17
18
19
20
Dr. Hirokawa examined Plaintiff on June 15, 2006. AR 388. He diagnosed Plaintiff with a depressive disorder not otherwise specified, polysubstance dependence in remission, and paranoid personality disorder. AR 392. He assessed Plaintiff with a GAF score of 63. AR 392. Dr. Hirokawa found there to be fair likelihood that Plaintiff's mental condition would improve within the next twelve months. Although he felt Plaintiff appeared to have poor interpersonal skills and a history involving some problem relationships, he determined Plaintiff's functional abilities were good to fair. AR 392-393. Specifically, Dr. Hirokawa found Plaintiff had good abilities in the areas of managing his own funds, remembering work-like procedures, understanding and remembering very short to detailed instructions, and maintaining attention and concentration for extended periods. AR 393. He also determined Plaintiff had fair abilities to accept instructions from supervisors, respond appropriately to criticism, interact with coworkers and the public, and to maintain regular attendance. Finally, Dr. Hirokawa found Plaintiff had a mild to moderate risk of deteriorating in a work setting. AR 393.

21
22
23
A review of the record demonstrates that the ALJ fully details Dr. Hirokawa's opinion and did adopt some of his findings but also gave clear and convincing reasons for only according it some weight. AR 15-16. In doing so, the ALJ notes as follows:

24
25
26
> As for the opinion evidence, I give some weight to the consultative psychologist, Dr. Hirokawa. However, he did not have the opportunity to review the entire record, such as Exhibit 13F, the records of the Veteran's Administration. I believe that the doctor gave the claimant too much credibility in establishing the level of limitation.
> AR 17.

27
28

Thus, the ALJ only partially relied upon this assessment because Dr. Hirokawa did not have access to the entire medical record at the time of his review. This is a clear and convincing reason to accord this opinion limited weight.[3]

Furthermore, Plaintiff correctly notes that  Dr. Hirokawa indicates that Plaintiff has poor interpersonal skills, paranoia, sensitivity to criticism, misinterpretation of others and problem relationships. AR 392.  However, when Dr. Hirokawa assessed Plaintiff's ability to function "based on his psychiatric conditions," Dr. Hirokawa expressly noted Plaintiff had good and fair abilities in the areas outlined above.  AR 393.  Plaintiff argues that fair means "not good" (Doc. 20 at 4), however, the Court is not persuaded by this argument when the report and the other medical evidence in the record are examined as a whole.  The ALJ determined Plaintiff had the RFC to perform simple repetitive tasks, that he could maintain attention, concentration, persistence and pace, interact with others, and adapt to usual changes in the work setting. AR 13. These limitations are consistent with Dr. Hirokawa's opinion and Dr. Unger's assessment.

### 2.      Dr. Unger's Assessment

Dr. Unger, a non-examining State Agency physician, reviewed Plaintiff's entire medical record including Dr. Hirokawa's consultative examination and found that Plaintiff is not significantly limited in his ability to: 1) remember locations and work-like procedures; 2) to understand and remember and carry out short, simple instructions; 3) to perform and adhere to a schedule; or 4) to work with others. AR 414-415.   Dr. Unger also noted that Plaintiff is moderately limited in the areas of: 1) understanding and remembering detailed instructions; 2) maintaining attention and concentration for extended periods; 3) interacting appropriately with the public; 4) getting along with coworkers/peers without exhibiting behavioral extremes, and 5) maintaining a normal workday/week without being interrupted by psychologically-based symptoms. AR 416-417.

Dr. Unger concluded that Plaintiff has minimal limitations in areas of understanding and memory, sustained concentration, persistence, and adaptation. He also noted that Plaintiff has

---

[3] In fact, in a letter dated June 3, 2009, Plaintiff's attorney argued that Dr. Hirokawa's exam was "based on limited examination and insufficient medical evidence to support their findings and conclusions." AR 188.

1  less than substantial limitations regarding social interactions and that he has the ability to

2  perform simple routine repetitive tasks in a competitive work environment for a normal workday

3  and workweek. AR 416.

4      Although Plaintiff argues that the ALJ rejected Dr. Unger's opinion, he provides no

5  specific facts to support this assertion. Moreover, a review of the record demonstrates that the

6  ALJ clearly summarized Dr. Unger's report and adopted the findings when formulating the RFC.

7  The ALJ noted :

8

9          I give substantial weight to the opinions expressed by the state agency medical
           consultants; however I believe they gave the claimant a bit too much credibility
           regarding the claims of inability to complete a work day or work week. I consider
10         the limitations in those areas to be mild rather than moderate. The longitudinal
           record as a whole supports the established residual functional capacity.  In sum,
11         the above residual functional capacity assessment is supported by the overall
           evidence of record for the reasons discussed above.
12         AR 18.

13     Further, Plaintiff contends the ALJ interjected his own opinion rather than relying on the

14  doctor's opinion.  This argument is without merit. The ALJ gave clear and convincing reasons

15  for according the medical opinions differing weights and the RFC is substantially supported by

16  Dr. Hirokawa and Dr. Unger's opinions.

17      **B. GAF Scores**

18      Plaintiff argues that his treating physicians at the VA assigned him a GAF score of 50

19  and the ALJ erred by failing to consider this data.  (Doc. 15 at 7).  He further argues that this

20  score indicates an inability to hold a job due to serious mental health symptoms and should have

21  been mentioned.  Defendant contends that the GAF score is not binding on the Social Security

22  Administration and is only intended to be used to make treatment decisions.  Accordingly,

23  Defendant argues the ALJ did not err in failing to explicitly consider this score as it was not

24  probative evidence.

25      The Global GAF scale reflects a clinician's assessment of the individual's overall level

26  of functioning.  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental*

27  *Disorders* 30 (4th ed. 2000) ("DSM IV").  While a GAF score reflects a clinician's assessment of

28  the individual's overall level of functioning, use of the GAF score is not endorsed by the Social

Security Administration for SSI disability programs as "it does not have a direct correlation to the severity requirements in our mental disorders listing." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).  A GAF in the range of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational functioning (e.g. suicidal ideation, no friends, unable to keep a job).  DSM-IV at 32.  .  A GAF between 51 and 60 indicates "[moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers).  DSM-IV at 34.  A GAF between 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia *or* some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

Here, Plaintiff was given a number of GAF scores over the years ranging from 50 to 63. AR 320, 338, 392, 697.  Although Plaintiff argues the ALJ erroneously failed to mention the GAF scores in the VA records, none of the practitioners cited by Plaintiff make specific findings regarding his ability to work.  AR 313, 607.  The doctors' failures to make more specific findings means the opinions are  not entitled to deference.  *Morgan v. Comm'r*, 169 F. 3d 595, 601 (9th Cir. 1999) (where a doctor identifies symptoms that might limit a claimant's ability to work, but does not explain how her symptoms translate into specific functional deficits which preclude work activity, the opinion is not entitled to deference).  Accordingly, the ALJ did not error in failing to consider the GAF scores offered by these practitioners.[4]

### C. Duty of the ALJ to Develop the Record

Plaintiff next argues that the ALJ had a duty to develop the record by ordering an updated consultative examination. (Doc. 20 at 3). Defendant did not address this argument.

In general, it is the duty of the claimant to prove to the ALJ that he is disabled.  20 C.F.R. § 404.1512(a).  To this end, he must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged

---

[4] It is noted that the ALJ did recognize the importance of the VA progress notes when he gave Dr. Hirokawa's assessment less weight because he did not have an opportunity to consider them.  AR 17.

impairment and its effect on his ability to work.  *Id.*  For his part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports."  20 C.F.R. § 404.1512(d).   If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e);  404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).  However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

In this case, the record was not ambiguous or inadequate as noted above.  There is substantial evidence in the  medical record to establish that Plaintiff is capable of performing basic job functions.  Accordingly, the ALJ did not fail in his duty to develop the record by not ordering an updated consultative examination.

///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Daniel Kibbee.

IT IS SO ORDERED.

Dated:    **May 24, 2011**                        **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE